WILLIAM OTTMAN AND COMPANY (INCORPORATED), Appellant, *v.* MILTON ROBBINS, Individually and as Trustee, and ADA L. CONNER, as Administratrix, etc., of WILLIAM M. CONNER, Deceased, Respondents.

*Bill of sale and chattel mortgage — when they must be considered together — when claims are deemed to have been discharged — when entries in books are unnecessary — chattel mortgage — when not fraudulent by reason of its amount — action brought to set aside a transfer — the plaintiff therein cannot ask that the transfer be adjudged valid as a trust created in part for his benefit.*

Where a bill of sale and a chattel mortgage constitute parts of the same transaction they must be read and considered together.

It was agreed between a debtor and certain of his creditors that the creditors should advance a certain amount of cash to pay certain liabilities of the debtor, and that they should satisfy their claims against the debtor, and that in consideration thereof the debtor should transfer to them certain furniture and a certain lease. Such agreement was carried out, except that the debtor, when it was afterwards discovered that the lease contained a provision forbidding the assignment thereof, instead of giving an assignment of the lease, gave a chattel mortgage thereon for the entire amount which the debtor was obtaining from his creditors. By means of this mortgage the parties intended to effectuate the performance of the debtor's original agreement to transfer the lease.

*Held,* that the purchasers in fact acquired nothing more by the giving of the mortgage than they were entitled to under the original agreement with their debtor;

That the mortgage was operative to prevent the debtor from mortgaging the lease to third parties in violation of the purchasing creditors' rights;

That the giving of such chattel mortgage, in the amount of the entire consideration moving to the debtor, was not fraudulent as to his other creditors;

That when the debtor did those things which the creditors agreed to accept in satisfaction of their debts, such debts were in fact satisfied and discharged, and that the making of entries in the several books of the creditors and debtor, respectively, was not necessary to accomplish such result.

Where an action is brought upon the theory that a certain transfer is fraudulent and void as against the plaintiff, the plaintiff in such action is not in a position to ask that the transaction be regarded as a valid transfer to certain of the defendants as trustees, under an agreement under which such transfer was to be held by them in part for the benefit of the plaintiff.

APPEAL by the plaintiff, William Ottman and Company (Incorporated), from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 23d day of November, 1893, upon the decision of the court rendered after a trial at the New York Special Term dismissing the plaintiff's complaint upon the merits.

*M. A. Kursheedt* and *Joseph Fettretch,* for the appellant.

*Elihu Root* and *E. G. Duvall, Jr.,* for the respondents.

PARKER, J.:

For some little time prior to August 17, 1891, William M. Conner, who was the proprietor of the St. James Hotel, in this city, had been conducting the business with the result that on that day his situation was substantially as follows: His indebtedness was about $86,000, of which $36,000 was due for rent and water rates. As security for the payment of rents his lessors held a chattel mortgage covering all the furniture in the hotel. They had already applied to this court by petition for leave to foreclose the mortgage, upon which an order to show cause had been issued, returnable before the court on the seventeenth of August. The lessors had also commenced proceedings in the Sixth District Court to dispossess Conner for non-payment of rent.

The value of the hotel furniture, apart from the lease, was about $16,000. From this statement it is at once apparent that unless

money could be promptly had with which to pay the rent, so as to stop the proceedings instituted to dispossess Conner and foreclose the chattel mortgage, his interest in the lease would be cut off and the furniture taken from him, leaving substantially nothing for the unsecured creditors, having claims aggregating $50,000.

Conner was powerless to prevent it, for he neither had $36,000 in money nor the means of getting it. In the presence of this situation his creditors held a meeting at which this plaintiff was represented.

It was suggested by one of the creditors that if the proceedings pending against Conner could be terminated so as to give the creditors time to find a purchaser for the lease, furniture and good will, something substantial might be received on account of their claims, and to that end it was proposed that $35,700 should be advanced by the creditors in proportion to their claims and applied in satisfaction of the rent and Croton water charges, and that the creditors should cancel their claims against Conner in consideration of a conveyance to them of the furniture in and lease of the hotel premises.

Creditors, including the defendant Robbins, representing about $35,000 of the $50,000 indebtedness, agreed to enter into such an arrangement and advance the sum of money needed. No creditor made any objection to the plan, but some of them, including this plaintiff, although requested to enter into it upon equal terms with the others, refused to do so. The agreement was entered into in accordance with the original plan with one exception. An examination of the lease disclosed that it contained a provision forbidding an assignment of it, so a transfer of the lease was attempted to be made by means of a chattel mortgage, which was intended to accomplish the entire divesting of Conner's interest therein either through foreclosure or through a surrender and new lease. Thereafter the St. James Hotel was conducted by the defendant Robbins and the other purchasing creditors, under the direction of an agent employed by them, until the middle of November, 1891, when the property was sold and conveyed to Gustave Dorval for the sum of $80,000. This was accomplished by giving a bill of sale of the furniture to Dorval, and default being made in the payment of rent so that the lessee and his mortgagee under the chattel mortgage should be dispossessed, and the purchaser Dorval should enter under a new lease, which was made.

It will be observed that the result of the entire transaction was to vindicate the business foresight and courage of the creditors who, combining together, advanced more money to save the interest, which Conner then had in the property, than their claims against him aggregated, the outcome of the transaction being that they received back the money thus advanced, together with the payment of their claims in full, with a sufficient overplus to at least defray the costs and expenses incident to the transaction. By this suit the plaintiff seeks to share in the fruit resulting from the enterprise and thrift of its co-creditors, notwithstanding its refusal to aid in its production.

The ground of the action as stated in the fifth article of the complaint is, "That by the execution and delivery of the several instruments, and the transfers herein referred to, it was intended to transfer all the property of the said William M. Conner to the defendant Robbins for the benefit of himself and certain other creditors of the said William M. Conner, exclusive of the plaintiff. That all of the foregoing was done with a view to hinder, delay and defraud a number of the creditors of the said William M. Conner, including this plaintiff, and with a view of giving unlawful preference to the defendant Robbins and certain other of the creditors of the said William M. Conner, exclusive of the plaintiff, and in violation of chapter 466 of the Laws of 1877, as amended by chapter 503 of the Laws of 1887."

And the relief demanded is that the transfers be declared null and void as against the plaintiff; that a receiver be appointed of all the property and effects included in such transfers, and the plaintiff's judgment paid out of the funds that may come into his hands. Upon this appeal the plaintiff presents still another ground, upon which it predicates a claim for relief, which will be considered later.

It is apparent from the facts stated that the learned trial court was right in reaching the conclusion that there was no fraud in fact in this transaction, for it was openly and fairly conducted, with a view of securing such benefits as might result to all creditors who should come in and share the risks of the undertaking on equal terms. The plaintiff, who is the only creditor complaining, was invited to be present at the meeting of creditors, and to come in and share with its co-creditors in the gain or loss which should result

from the transaction. It sent a representative to the meeting of August seventeenth, who listened to the discussion and heard the propositions, and, while it refused to join its co-creditors in an execution of the plan adopted, it made no objection to the making of the arrangement by the other creditors. It is apparent, therefore, that in the whole transaction as against the plaintiff there was no element of concealment, of unfair advantage or of disregard of its rights.

The alleged badges of fraud are: · (1) That by the bill of sale everything contained in and belonging to the St. James Hotel, including the good will of the business, was transferred for the expressed consideration of one dollar and other sufficient consideration, when as a matter of fact the dollar was not paid, and the other sufficient consideration specified appears to have been made up by a pretended cancellation of the claims of the defendant Robbins and the other creditors who were parties to the transaction.

This statement is erroneous, in that it fails to recognize that the entire transaction must be considered together.

The bill of sale cannot be separated from the chattel mortgage and the subsequent proceedings to divest absolutely the title of Conner in the lease. If the transfer of the lease had been accomplished by means of an assignment, as at first contemplated, instead of the method adopted of divesting Conner's interest in the lease, made necessary by the clause in the lease prohibiting an assignment, there would be no excuse for the suggestions which are made on this appeal against the legal integrity of the transaction.

It appears, however, that the bill of sale and chattel mortgage constituted parts of the same transaction, and they must be read and considered together. Thus considered, we find that the bill of sale, and chattel mortgage, and the submission by Conner to being divested of all his title in the lease by the proceedings which were contemplated, and subsequently took place, constituted the consideration moving from him for that which came from the creditors, while the payment of $35,700 and the cancellation of the purchasing creditors' claim furnished a consideration moving from them for all that came from Conner. The appellant says that there was no proof of cancellation of the purchasing creditors' claims other than that it was so entered in the books of Conner. That in addition to

that there should have been proof of cancellation in the books of the creditors. But this suggestion is without merit, for the purchasing creditors agreed to satisfy their claims in consideration of Conner's executing the bill of sale and chattel mortgage, and submit to a divesting of his title in the lease. And when Conner did the things which the creditors agreed to accept in satisfaction of the debts, such debts were, in fact, satisfied and discharged. Entries in their several books were not necessary to accomplish that result. A debt is discharged by payment, not by an entry in the creditors' books.

(2) The fact that the chattel mortgage was taken by the defendant Robbins, "individually and as trustee," to secure the payment of an alleged indebtedness of $75,000 on demand, is alleged to furnish evidence that the scheme was fraudulent.

No inferences of fraud can be drawn from the mortgage, considered in the light of the entire transaction. The giving of the mortgage was intended to be but a step in the direction of the transfer of title. The purchasing creditors were about to pay $35,700 in cash, for which they were to receive, outside of the mortgage on the lease, nothing except furniture of the value of $16,000.

The most valuable part of the consideration for which they were to advance this sum of money, and in addition satisfy their claims aggregating about $35,000 against Conner, consisted of this lease. As they were prevented from getting an assignment of the lease, because of the clause prohibiting an assignment, they took a lien upon the lease for the entire amount of the consideration which Conner was getting from them, and by the mortgage the parties intended to effectuate the performance of Conner's original agreement to transfer the lease. The purchasers acquired nothing more by the giving of the mortgage than they were entitled to under the original agreement with Conner, but it operated to prevent Conner from mortgaging the lease to third parties in violation of the purchasing creditors' rights.

(3) The appellant claims that the cancellation of a certain agreement by the defendant Robbins and his fellow committeemen, was fraudulent as against the plaintiff and the other creditors of Conner. This agreement, called a trust agreement, was entered into between Con-

ner and his creditors, other than his lessors, in February, 1891, by the terms of which a committee of three, of whom the defendant Robbins was one, were to represent the creditors in the conduct of the hotel business, until the indebtedness, due to the several creditors named in the agreement, should be paid. It is conceded that under this agreement there was not accomplished the results hoped for.

Indeed, from the time of its execution down to its cancellation in August, the business of every month resulted in a loss instead of a profit. One of the provisions of this agreement was: "And it is also further agreed by and between the said parties that, should the result of any one month's business show a loss or a profit of less than the sum of $2,500, that then, and in that event, at the option of the said parties of the second part, or their said committee, this agreement may be forthwith abrogated, canceled and annulled."

At the meeting on the seventeenth of August the result of the business was placed before the creditors, and after discussion a vote was taken upon a motion that the agreement be canceled, and no creditor voted in the negative, although this plaintiff had a representative at that meeting. The secretary thereupon noted upon the agreement that it had been canceled by a vote of the creditors, and the committee indorsed thereon, in pursuance of the provision which we have quoted, the following: "The within paper canceled and abrogated in pursuance of the provisions therein contained," and signed their names thereto.

It is perfectly clear that the committee had full authority to cancel this agreement, and that which they did operated to put an end to it. There was no concealment about it whatever; the matter was fully discussed in the presence of the creditors, and all either voted that it be done or acquiesced in it by their silence. Our assertion, that the effect of the action of the committee on the seventeenth of August, was to cancel and put at an end the agreement of February, 1891, furnishes sufficient answer to the claim of the appellant, that if any title to the furniture and lease was transferred by the bill of sale and chattel mortgage, and the proceedings had thereunder, it was impressed with the agreement of February, 1891, and, therefore, the plaintiff became entitled to relief in equity against Robbins and his associate committeemen as trustees.

But there is another answer; the complaint does not refer to the lease, nor assert any rights under it. On the contrary, the cause of action alleged is wholly inconsistent with any such claim. It proceeds upon the theory that the transaction of August seventeenth, and the whole of it, was fraudulent and void as against the plaintiff. Plaintiff is not, therefore, in this suit in a position to ask that the transaction be regarded as a valid transfer to the defendant Robbins and others as trustees under the agreement of February, 1891, and the trial court properly so held.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., concured.

Judgment affirmed, with costs.